UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

U.S. NUTRACEUTICALS, L.L.C., d/b/a
VALENSA INTERNATIONAL; and THE
BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,

            CASE NO.:  5:12-cv-366 OC-10 PRL

    Plaintiffs,

vs.

CYANOTECH CORPORATION, and
NUTREX HAWAII, INC.,

    Defendants.
_____/

## AMENDED COUNTERCLAIMS

Defendants Cyanotech Corporation ("Cyanotech") and Nutrex Hawaii, Inc. ("Nutrex") (collectively, "Defendants") assert the following Amended Counterclaims against Plaintiffs U.S. Nutraceuticals LLC dba Valensa International ("Valensa") and the Board of Trustees of The University of Illinois ("the University of Illinois") (collectively, "Plaintiffs"):

### JURISDICTION

1.     Valensa is a limited liability corporation formed under the laws of the State of Florida and has a principal place of business at 2751 Nutra Lane, Eustis, Florida 32726.

2.     The University of Illinois is a body corporate and politic of the State of Illinois with a place of business at 352 Henry Administration Building, MC-350, 506 South Wright Street, Urbana, IL 61801.

2169309

3. Cyanotech is a publicly-traded corporation formed under the laws of the State of Nevada with a principal place of business at 73-4460 Queen Kaahumanu Highway, Suite 102, Kailua-Kona, Hawaii 96740.

4. Nutrex is a corporation formed under the laws of the State of Hawaii with a principal place of business at 73-4460 Queen Kaahumanu Highway, Suite 102, Kailua-Kona, Hawaii 96740.

5. This Court has original jurisdiction over these counterclaims pursuant to 28 U.S.C. §§1331, 1332, and 1338(a) and (b); and 15 U.S.C. §§ 1121, 1122 and 1125(a) because: this action involves claims under the laws of the United States, namely the Patent Code, 35 U.S.C. §1, *et seq*., and the Lanham Act, 15 U.S.C. §1051, *et seq.;* because there is complete diversity between the parties and the claims exceed $75,000.00, exclusive of interest and costs; and because these counterclaims assert a claim for unfair competition joined with a substantially related claim arising under the patent laws of the United States. The University of Illinois has waived sovereign immunity as to any counterclaims asserted herein by initiating this action as a party plaintiff.

6. Invocation of the Declaratory Judgment Act, 28 U.S.C. §§2201-2202, is appropriate because Defendants have been expressly threatened by Plaintiffs with a baseless claim of infringement of the Patent-in-Suit, U.S. Patent No. 5,527,533 ("the '533 Patent" or "the Tso Patent"). The '533 Patent is also invalid for failure to comply with 35 U.S.C. §§102, 103 and 112. The '533 claims are not novel; they are anticipated or rendered obvious by the prior art; and the Tso specification does not support the claims.

7. In addition to exclusive jurisdiction with regard to the asserted federal patent and unfair competition claims, this Court has supplemental jurisdiction under 28 U.S.C.

§1367(a) over all claims for relief that are so related to the patent claims that they form part of the same case or controversy.

## COUNT I

**(Declaratory Judgment of Non-Infringement and Invalidity)**

The allegations of the preceding paragraphs of Defendants' counterclaims as well as the allegations of Defendants' affirmative defenses are re-averred and re-alleged as if set forth in full herein.

8. There is an actual and justiciable controversy between Plaintiffs and Defendants with respect to infringement and validity of the '533 Patent. The controversy between the parties has adverse legal interests of such sufficient immediacy to warrant a declaratory action.

9. Defendants have been repeatedly charged by Plaintiffs with engaging in allegedly infringing activities, including by this lawsuit.

10. In order to infringe, an accused product or method must meet every limitation of one or more claims of the patent in suit, either literally or under the doctrine of equivalents. The doctrine of equivalents is limited by file history estoppel which precludes a patentee from reclaiming patent scope relinquished during prosecution.

11. The broad scope of the originally filed application for the Tso patent was given up in order to obtain patent allowance.

12. The only Tso patent claims that were allowed are "method of use" claims. They address a method of "treating an individual" with a retinal "disease," "damage," or "injury," or who is suffering from "macular degeneration," by "administering a therapeutically-effective amount" of astaxanthin.

13. Cyanotech, as a manufacturer, does not treat any individuals with astaxanthin or any other substance for any medical condition. It therefore cannot directly infringe any of the method of use of claims of the '533 Patent.

14. In order to indirectly infringe the '533 Patent, there must be another person or entity who directly infringes the '533 claims by treating individuals suffering from eye related disease, injury or damage with a "therapeutically-effective" dose of astaxanthin. This has never been shown to be the case.

15. Valensa has not identified any individual who has been treated with Cyanotech's astaxanthin for retinal disease or free radical-induced injury, nor shown that Defendants were aware of and knowingly and intentionally induced such medical treatment in a "therapeutically-effective" dose with the intent of causing infringement of the '533 Patent.

16. Defendants have not knowingly and intentionally induced any third party to medically treat himself or herself or another person suffering from eye disease with Cyanotech's astaxanthin product, knowing that such treatment would infringe a claim of the '533 Patent.

17. Defendants have neither: (a) actively induced anyone to use Valensa's astaxanthin in an infringing manner; nor (b) sold or imported astaxanthin or astaxanthin products for use in practicing the Tso '533 process, knowing that such products have been especially made or especially adapted for use in any such infringement.

18. Astaxanthin is not "especially made or especially adapted" for the purpose treating patients suffering from eye disease. On the contrary, astaxanthin is a staple commodity suitable for multiple other non-infringing uses, e.g., as a prophylactic to avoid

4

injury, such as reducing the prospective effects of sunburn, to promote generic eye health and for many other uses related to astaxanthin's antioxidant properties. These facts preclude contributory infringement.

19. All 27 claims of the '533 Patent require "treating an individual" with a retinal "disease," "damage," or "injury" by "administering a therapeutically-effective amount" of astaxanthin.

20. The '533 Tso patent has nine independent claims. They are all method of use claims. No device, apparatus, or chemical composition is claimed. Those nine claims are:

> 1. A method of *treating* an individual suffering from retinal damage or retinal disease, said method comprising administering a therapeutically effective amount of astaxanthin to the individual to improve the vision of the individual.
>
> 13. A method of *treating an individual* comprising administering a therapeutically effective amount of astaxanthin to the individual to protect neurons in a retina of the individual from free-radical induced retinal injury.
>
> 14. A method of *treating an individual suffering from* neuronal damage to a retina comprising administering a therapeutically-effective amount of astaxanthin to the individual to improve the condition of the retina.
>
> 16. A method of treating *an individual suffering from* age-related macular degeneration comprising administering a therapeutically-effective amount of astaxanthin to the individual to retard the progress of age-related macular degeneration.
>
> 17. A method of treating *an individual suffering from* an ischemic or intraocular pressure-related disease of a retina comprising administering a therapeutically-effective amount of astaxanthin to the individual to improve the condition of the retina and to prevent further damage to the retina.
>
> 19. A method of treating *an individual suffering from* an inflammatory disease of a retina comprising administering a therapeutically effective amount of astaxanthin to the individual to improve the condition of the retina and to prevent further damage to the retina.
>
> 21. A method of treating *an individual suffering from* a free radical-induced injury to a central nervous system, said method comprising

administering a therapeutically-effective amount of astaxanthin to the individual to improve the condition of the central nervous system.

26. A method of *treating an individual suffering from* a degenerative retinal disease, said method comprising administering a therapeutically effective amount of astaxanthin to the individual to retard the progress of the disease.

27. A method of *treating an individual suffering from* a degenerative central nervous system disease of a brain or spinal cord, said method comprising administering a therapeutically effective amount of astaxanthin to the individual to retard the progress of the disease.

21. The '533 Patent specification is directed to methods of using a "therapeutically-effective amount" of astaxanthin in "treating individuals suffering from … an eye injury or disease and to methods of retarding a degenerative disease of the eye." Neither the "Summary of the Invention" nor the "Detailed Description of the Preferred Embodiments" describe using astaxanthin as an "eye health" prophylactic for use by healthy individuals; nor do they provide the appropriate dosage for such use.

22. The Summary of Invention spells out that a "therapeutic dosage" is: ". . . about 5 to about 500 milligrams (mg) of astaxanthin, and preferably about 10 to about 200 mg, *per kilogram (kg) of body weight* per dose…" Col. 7, lns. 4-9. There is no support in the specification, claims or file history for any other dosage. At this dosage, 325/750 mg. to 1.5/3.75 grams of astaxanthin is required to treat a 75 kg. (165 lb.) person. This dosage is far higher than any formulation recommended for general prophylactic eye health purposes.

23. The largest daily dosage recognized by the U.S. Food and Drug Asministration ("FDA") for a dietary supplement is 12 mg./day, regardless of body weight. This equates to 0.16 mg. of astaxanthin per kg. for a 75 kg. person.

24. Cyanotech's retail formulations are between 4 (the highest dosage recommended by Valensa) and 12 mg. (the highest FDA-recognized dose) per person, per

6

day, i.e., 0.053 to 0.16 mg/kg. for a 75kg. person. Therefore, Cyanotech's customers following Cyanotech's recommendations do not use a "therapeutically effective amount" of astaxanthin as required by every claim of the '533 Patent.

25. As originally filed, the '533 application included broad claims directed to "beneficiating," and "protecting" the eye, as opposed to "treating" individuals "suffering from" "disease," "damage" or "injury." However, these claims were twice amended, first to "ameliorating" the vision of an individual …," then to a "treating an individual …." Each amendment was an effort to address specific examiner rejections. This process was successful only with the final amendment.

26. The examiner's January 30, 1995 Office Action No. 1 rejected all 28 claims under 35 U.S.C. §112, second paragraph, as being "indefinite." Additionally, claims 14-16, 22-26 and 28 were rejected under Section 112, for lack of an enabling disclosure. Claims 1-24 and 27 were further rejected under 35 U.S.C. §103 as obvious in light of European patent 467,795, an article written by Li, et al in "Current Eye Res." (1991) and U.S. patent 3,920,834, which disclosed the well known use of astaxanthin to obtain protective anti-free radical activity to suppress the adverse effects of solar radiation. Claims 25-26 and 28 were similarly rejected under 35 U.S.C. §103 as obvious in view of the above prior art plus U.S. patent 5,243,014 which disclosed that carotenoids, such as Vitamin A homologues, e.g. astaxanthin, provide neuroprotective and neurogenerative effects.

27. In response to Office Action 1, Claim 1 was amended by Tso to replace "beneficiating" with "ameliorating" and to add "retinal," which was also added to claims 6, 9, 10-13, 20, 22 and 27. "Ischemic insult" to the retina was added to claim 15 and "brain or

7

spinal cord" was added to claim 28, while claim 16 was deleted entirely. None of these amendments satisfied the examiner.

28. In his September 7, 1995 Office Action, the Examiner repeated his indefiniteness rejections to all remaining claims, i.e., 1-15 and 17-28, under 35 U.S.C. §112, second and sixth paragraphs, explaining, that the claim language was still "indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as his invention," noting further that "ameliorating" "resulted in the same deficiency as the previously rejected term … "beneficiating." This rejection was made final.

29. In response, Tso amended every independent claim to include the italicized limitations noted in Paragraph 20. Specifically, claims 13, 14, 17, 18, 20, 22, 27 and 28 were amended to recite "treating an individual." Claim 1 was further amended to require an individual "suffering from retinal damage or retinal disease." Claims 14, 16, 17, 19, 21, 26, and 27 were amended to add "treating an individual suffering from…" These amendments limited Tso's claims to the treatment of individuals with existing eye injuries or diseases. Tso gave up any prophylactic function as applied to healthy individuals.

30. "Treating an individual," which is present in every claim, cannot be expanded to include prophylactic use.

31. Tso's Summary of the Invention uses "treating" in conjunction with "individuals suffering from central nervous system injury or disease." "Treating" is thereafter always followed by or used in conjunction with "suffering from" and/or "injury," "damage" or "disease."

32. "Administering a therapeutically effective amount" appears in every claim. "Therapeutically" addresses "healing" or "treating" an "injury or disease."

8

33.     Claims cannot be given a scope of equivalents that encompasses invalidating prior art. The prior art to Tso clearly addresses the use of astaxanthin to obtain protection from solar radiation. "Treating an individual;" "suffering from;" "therapeutically effective amount;" and "damage, disease and/or injury" cannot therefore be broadened to include protection of healthy eyes from solar radiation or free radical activity.

34.     In spite of Tso's narrowing of to the scope of the '533 Patent claims, Valensa, in bad faith, has threatened Defendants, and on information and belief, has threatened Defendants' distributors and other parties who supply astaxanthin as an ingredient in nutritional supplement formulations for use in eye health, with infringement of the '533 Patent. Plaintiffs knew or should have known that the claims of the '533 Patent did not cover the alleged infringing activity.

35.     35 U.S.C. 112 requires that all claims of a patent be adequately supported by a disclosure in the specification or elsewhere in the original patent application that provides sufficient information to permit one of ordinary skill in the art to practice the invention without undue experimentation. No dosage for general eye health purposes is provided in the '553 specification. Accordingly, if read as Valensa asserts, all of the '553 claims are invalid under 35 U.S.C. §112 for lack of enabling support.

36.     The Tso patent specification also provides no support for the claim terms "*improve vision*" (claim 1), "*improve the condition of the retina*" (claim 14), "*retard the progress of age-related macular degeneration*" (claim 16), or "*improve the condition of the central nervous system*" (clam 21). None of the italicized phrases nor any equivalent terms appear anywhere in the specification.

37.     There is no support in the Tso specification, as required by Section 112, for the above claim terms or the terms "*protect neurons*" (claim 13), "*prevent further damage to the retina*" (claims 17 and 19) and "retard *the progress of the disease*" (claims 26 and 27).

38.     Each of the '553 claims are invalid under 35 U.S.C. §112, first para.

39.     Tso was not the first to discover the alleged inventions claimed in the '533 Patent.  Those discoveries were made by others a half-century ago, as established by the following prior art patents and publications:

Grangaud, René, "Astaxanthin Research, New Vitamin A Factor", 69 pp.  (Éditions Desoer, Liège, 1951).

Massonet, Reneé, "Research into the Biochemistry of Astaxanthin", 146 pp. (F.Fontana, Algiers, 1960).

Office Actions and Responses (including Declarations) in App. No. 08/330,194.

Bibliographic citations and abstracts of the Grangaud and Massonet References, including exemplary searches in Chemical Abstracts print media (1947 to 1965) and online databases (available pre-Critical Date).

Massonet, R., Conquy, T., and Grangaud, R.R.  "The Study of Astaxanthin Transformation into Vitamin A in the Albino Rat: in vitro Experiments", Ann. Nutrit. Alimentation, Vol. 19 pp. pages C655-C658 (1965)), English translation, with translator's Certificate for Exhibits 1008, 1010, 1012, 1014, 1016, and 1018.

Grangaud, René; Massonet, Renée; Conquy Thérèse; and Ridolfo, Jacqueline, "Transformation of Astaxanthin to Vitamin A in the Albino Rat:  Neoformation in vivo and in vitro", Comptes Rendus de l'Academie des Sciences, Vol. 252, pp. 1854-1856 (1961b).

Massonet, R., Conquy, T., and Grangaud, R., "Transformation of astaxanthin to vitamin A by ocular tissue of the rat in vitro", Comptes rendus des seances de la Societe de biologie, Vol. 155, pp. 747-750 (1961a).

Grangaud, R., and Massonet, R., "Antixerophthalmic effect of the esters of astaxanthin", Comptes rendus des seances de la Societe de biologie, Vol. 148, pp. 1392-1394 (1954).

10

Grangaud, René, and Massonet, Renée, "Antixerophthalmic Activity of the Carotenoid Pigment of the Aristeomorpha foliacea (Penæidæ)", Comptes Rendus de l'Academie des Sciences, Vol. 230, pp. 1319-1321 (March 27, 1950).

Grangaud, René, and Massonet, Renée, "The Action of Shrimp Oil (Penaeus foliaceus) on the Vitamin A Deficient White Rat", Comptes Rendus de l'Academie des Sciences, Vol. 227, pp. 568-570 (1948).

Kurashige, M. et al., "Inhibition of Oxidative Injury of Biological Membranes by Astaxanthin", Physiol. Chem. Phys. and Med. NMR, 22, pp. 27-38 (1990).

U.S. Patent No. 5,310,764 ("Treatment of age related macular degeneration with beta-carotene"), to Baranowitz, et al., issued 10 May 1994.

Schiedt et al., "Recent progress on carotenoid metabolism in animals", Pure & Appl Chem, Vol. 63, No. 1 pp 89-100 (1991).

40.     Based on the foregoing, Defendants are entitled to a judgment that the Tso '533 Patent is invalid and that, in any event, Defendants do not infringe such patent.

## COUNT II

### (Unfair Competition under Haw. Rev. Stat. §480-2)

Defendants re-aver and re-allege the allegations of the preceding paragraphs of their counterclaims and the allegations of their affirmative defenses as if fully set forth herein.

41.     This claim seeks money damages and injunctive relief arising from Plaintiffs' unfair methods of competition in violation of Haw. Rev. Stat. §480-2.

42.     Haw. Rev. Stat. §480-2 makes it unlawful for a person to engage in unfair methods of competition in any trade or commerce.  Cyanotech and Nutrex market nutraceutical ingredients and products.  They compete, directly and indirectly, against Valensa, particularly with respect to the manufacture and sale of astaxanthin products. Defendants produce and sell astaxanthin products to consumers, as well as to other nutraceutical companies that repackage and rebrand the products as their own and/or incorporate Cyanotech-supplied astaxanthin in their own retail dosage form products.

43. Plaintiffs engaged in unfair methods of competition in violation of Haw. Rev. Stat. §480-2 by engaging in a systematic pattern and practice of making wholly baseless infringement threats and intimidating and harassing suppliers and sellers of astaxanthin products in Hawaii and elsewhere, including Defendants.

44. Specifically, on multiple occasions in the years 2010-2012, Plaintiffs' authorized representatives, including Valensa's president, Rudi Moerck, made materially false statements, both orally and in writing, to Defendants representatives, including Cyanotech's CEO, Brent Bailey, that the use of astaxanthin products as a preventive measure to maintain eye health infringed the claims of the '533 patent. These claims were objectively baseless for the reasons previously stated, including that the Tso patent was clearly not infringed, which Plaintiffs knew or should have known. The Tso patent was also invalid. Valensa's false statements and threats were knowingly made and directed to persons located in Hawaii, including Defendants.

45. Valensa repeatedly threatened to "shut down" Cyanotech's business and to embroil Defendants in prohibitively expensive patent litigation if Defendants did not capitulate and agree to purchase a license of the Patent-in-Suit from Plaintiffs in order to sell, or promote the use of, astaxanthin products for eye health (as distinct from therapeutic treatment of retinal injury or disease).

46. Upon information and belief, Plaintiffs made similar false claims and threats to other producers, buyers and sellers of astaxanthin products for the purpose of unlawfully restricting competition and thereby gaining an unfair competitive advantage.

47. At the time that Plaintiffs made the foregoing statements regarding the scope and nature of Plaintiffs' patent, Plaintiffs knew or should have known that those statements

were false.  Defendants repeatedly asked Valensa to explain Plaintiffs' construction of the claims in the '533 patent, and how Plaintiffs' construction was supported by the specification.  Valensa, in bad faith, refused to reply.  Rather than reply to Defendants' questions, Plaintiffs continued to threaten infringement litigation in bad faith.

48.     Plaintiffs' threats of patent infringement were objectively baseless because there is no plausible argument that the claims of the Tso patent include prophylactic or protective uses of astaxanthin as opposed to "therapeutic" or "treating" uses based on the clear language of the Tso claims and its file history.  The Tso patent is also invalid under 35 U.S.C. §§101, 102, 103 and 112.  Tso did not invent the subject matter claimed in the patent at issue.  The specification of the Tso patent does not support its claims, which are therefore invalid under 35 U.S.C. §112 as non-enabled and for lack of an appropriate written description showing that Tso was in possession of the invention at the time of the filing of the application.  These facts were also known to, but ignored by, Defendants.

49.     Valensa made its objectively baseless infringement claims with the intent to deceive, mislead, harass and intimidate Defendants and others in an effort to gain an unlawful and unfair competitive advantage.

50.     The University of Illinois has implicitly and explicitly authorized and/or ratified these actions by Valensa by, *inter alia,* authorizing and joining in this lawsuit.  On information and belief, the University of Illinois and Valensa have also had numerous communications, both orally and writing, with respect to the enforcement of the invalid Tso patent against Defendants and other astaxanthin suppliers, knowing that Defendants and the other suppliers were not infringing the same.

13

51. Plaintiffs' conduct and unfair methods of competition are injurious to consumers in Hawaii and elsewhere by, among other things, limiting competition and increasing costs.

52. Plaintiffs' conduct has adversely impacted, and continues to adversely impact, Defendants and consumers by, among other things: (a) threatening to disrupt Defendants' ability to serve their customers; (b) requiring Defendants to expend considerable resources to retain patent counsel to investigate and respond to Plaintiffs' fraudulent claims and threats; (c) unjustly and unfairly reducing competition for astaxanthin products; and (d) reducing the pool of potential customers for Defendants' astaxanthin products.

53. As a direct and proximate result of Plaintiffs' unfair completion, Defendants have suffered economic losses in an amount in excess of $75,000.00, the full amount of Defendants damages to be proven at trial.

## COUNT III

### (Violation of Section 43(a) of the Lanham Act)

The allegations of the preceding paragraphs of Defendants' counterclaims as well as the allegations of Defendants' affirmative defenses are re-averred and re-alleged as if set forth in full herein.

54. Plaintiffs have issued bad faith, wholly unsupported and unlawful threats of patent infringement to Defendants and others and have attempted to prohibit Defendants from engaging in lawful competition regarding the sale and promotion of astaxanthin, a natural product long known for its ability to neutralize free radicals, promote eye health, protect against sunburn, and protect against other types of photic damage, for prophylactic purposes, i.e., and eye protection, and not therapeutic use which would require approval by

14

the FDA. None of the parties have obtained such use for any of the astaxanthin products at issue.

55.     Plaintiffs have intentionally misrepresented that the astaxanthin products sold, advertised, and promoted by Valensa under license from the University of Illinois for use in a prophylactic manner, i.e., to prevent and protect against eye damage, are protected by a valid and subsisting U.S. patent, namely the '533 Tso patent. Plaintiffs have further misrepresented that the Defendants are infringing the '533 Patent by advertising and promoting astaxanthin products for use in a prophylactic manner, i.e., to prevent and protect against eye damage, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

56.     At the time that Plaintiffs made such threats and misrepresentations, Plaintiffs knew or should have known that their threats and misrepresentations were completely and objectively baseless and that Defendants' sale and promotion of astaxanthin products for eye health was lawful and non-infringing competition. Plaintiff's purpose was to injure Defendants and to restrain, limit and injure competition.

57.     The Tso '533 Patent is invalid under multiple sections of the U.S. Patent Code including Sections 102, 103, and 112, as explained in more detail in the previous counts and, even if such patent were valid, it is not infringed by any activities of the Defendants, as further explained in detail in the preceding paragraphs of Count I and II, in Defendants' affirmative defenses, and as further explained below.

58.     Tso did not invent the subject matter of the '533 Patent. That subject matter was fully anticipated by and discovered by Dr. Grangaud and Dr. Massonet and, in any event, was obvious in light of the printed publications issued by Dr. Grangaud and Dr. Massonet and the additional patents and publications listed in the preceding count.

Accordingly, the Tso '533 Patent is invalid under Sections 102 and 103 of the U.S. Patent Code.

59. The Tso '533 Patent is additionally invalid because there is insufficient support in the specification to enable one of ordinary skill in the art to practice the claimed invention, including Tso's "treating" claims, as specifically explained in the preceding counts.

60. Defendants do not "treat" any individual nor do they induce any other person to "treat" themselves or others with astaxanthin and, moreover, the products sold by Defendants have many non-infringing uses and are stable articles and commodities of commerce.

61. Defendant Valensa has falsely accused Plaintiffs of infringing the invalid Tso patent and the University of Illinois has ratified and approved such conduct by licensing Valensa to enforce the invalid Tso patent and by joining Valensa in the instant infringement suit. On information and belief, the University of Illinois and Valensa have also had numerous communications, both orally and writing, in which they conspired with one another with respect to the enforcement of the invalid Tso patent against Defendants, knowing that Defendants are not infringing that patent.

62. Valensa and the Defendants are direct competitors of one another, particularly with respect to the sales of astaxanthin products. Accordingly, sales made by Valensa by falsely claiming that Tso invented the use of astaxanthin to treat or protect eyes; that Valensa's products are covered by the Tso patent; and that Defendants infringe such patent have caused and are causing severe damage to Defendants in the form of lost sales and price erosion. Valensa has also damaged Defendants' reputation in the marketplace by falsely and

16

publicly accusing Defendants of patent infringement. While difficult to precisely establish, such damages are far in excess of $75,000.00 and are continuing.

63.     Because of the difficulty in ascertaining Defendants' damages, both in the past and in the future, and the irreparable harm caused to Defendants by Valensa's actions, Defendants are entitled to preliminary and permanent injunctions against Valensa and the University of Illinois to stop further misrepresentations and violations of the Lanham Act.

64.     Pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117, Defendants are entitled to recover three times the actual damages sustained by them, to recover the costs of this action, and to recover Plaintiffs' profits derived from their misrepresentations and violations of the Lanham Act. Because this is an exceptional case, Defendants are also entitled to recover their reasonable attorneys' fees.

65.     Pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1118, Defendants are also entitled to an order directing Valensa to destroy all labels, signs, prints, packages, receptacles, and advertisements bearing any false representation that Tso invented the use of astaxanthin for either preventive or therapeutic use with respect to the eyes or that Valensa's products are covered by the Tso patent.

66.     Pursuant to Section 40 of the Lanham Act, 15 U.S.C. §1122, the University of Illinois is not immune under the 11th Amendment of the Constitution or any other doctrine of sovereign immunity from suit in this Court.

**RELIEF REQUESTED**

Wherefore Defendants respectfully request this Court to enter a judgment against Plaintiffs and in favor of Defendants:

1.     Declaring the '533 Patent to be invalid;

2. Declaring that the '533 Patent is not infringed by any activities of Defendants;

3. Declaring that Plaintiffs have engaged in unfair competition prohibited by Haw. Rev. Stat. §480-2 and Section 43(a) of the Lanham Act;

4. Determining that the case is exceptional pursuant to 35 U.S.C. §285 and 15 U.S.C. §1117(a) and that Defendants are entitled to recover their reasonable attorneys' fees from Plaintiffs;

5. Awarding Defendants compensatory damages in an amount in excess of $75,000.00, the full amount to be proven at trial;

6. Trebling such damages pursuant to 35 U.S.C. §284, 15 U.S.C. §1117 and Haw. Rev. Stat. §480-13, and Section 43(a) of the Lanham Act;

7. Awarding Defendants statutory damages pursuant to Haw. Rev. Stat. §480-13;

8. Directing Plaintiffs to pay over their unlawful profits to Defendants pursuant to 15 U.S.C. §1117(a);

9. Directing Plaintiffs to destroy all advertising, promotional, marketing or packaging materials that falsely claim that Defendants' products are covered by the Tso patent; that falsely assert or imply that the Tso patent is valid; or that falsely assert or imply that any products or activities of Defendants, infringe the Tso patent;

10. Enjoining Plaintiffs from continuing their unlawful methods of competition, pursuant to Haw. Rev. Stat. §480-13 and Section 43(a) of the Lanham Act;

11. Awarding such further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Defendants demand trial by jury on all issues so triable.

Respectfully submitted,

/s/ John A. Boudet
John A. Boudet
Florida Bar No. 515670
jboudet@ralaw.com
Roetzel & Andress, LPA
420 South Orange Avenue
CNL Center II, 7th Floor
P. O. Box 6507
Orlando, FL  32802-6507
Telephone: 407-896-2224
Facsimile   407-835-3596

and

Robert A. Rowan
Admitted *Pro Hac Vice*
Michael E. Crawford
Admitted *Pro Hac Vice*
NIXON & VANDERHYE, P.C.
901 North Glebe Road
Arlington, Virginia 22203
Telephone: 703-816-4000
Facsimile:  703-816-4100

*Attorneys for Defendants Cyanotech Corporation and Nutrex Hawaii, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 28, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System, which will send a notification of electronic filing (NEF) to all counsel of record.

/s/ John A. Boudet
John A. Boudet