UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

U.S. NUTRACEUTICALS LLC and
BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,

      **Plaintiffs,**

**v.**                                              **Case No: 5:12-cv-366-Oc-10PRL**

**CYANOTECH CORPORATION and
NUTREX HAWAII, INC.**

      **Defendants.**

_____

## ORDER

This patent infringement action is before the Court for consideration of Plaintiffs' Motion to Compel Production of Opinions of Counsel (Doc. 100), to which Defendants' have responded. (Doc. 112).   For the reasons explained below, Plaintiffs' motion (Doc. 100) is due to be **DENIED**.

## I.      BACKGROUND

Plaintiff, U.S. Neutraceuticals, LLC, dba Valensa International ("Valensa"), is a neutraceutical company that develops, manufactures, and sells ingredients for natural health supplements.   (Doc. 1, ¶¶ 1,2).   The Board of Trustees of the University of Illinois, also a Plaintiff, is an academic institution that conducts research activities that have earned the University of Illinois numerous patents, including the Tso patent at issue in this case.  (Doc. 1, ¶¶ 3,4).  Plaintiff University of Illinois is the holder of the Tso patent (U.S. Patent No. 5,527,533), a patent for the "Method of Retarding and Ameliorating Central Nervous System and Eye Damage."  (Doc. 1, ¶ 19).  Plaintiff U.S. Neutraceuticals is an exclusive licensee of the Tso

patent, with the exclusive right to market dietary supplement astaxanthin products under the Tso patent.  (Doc. 1, ¶ 21).

In their Complaint, Plaintiffs allege that Defendants have infringed the Tso patent by manufacturing and selling competing products with the specific intent and suggestion that users of those products employ methods that are covered by claims of the Tso patent.  (Doc. 1, ¶ 23). Plaintiffs bring suit for patent infringement, alleging numerous products marketed by Defendants infringe the Tso patent.  Defendants bring counterclaims for unfair competition, deceptive and unfair trade practices, patent abuse, and unlawful competition.  (Doc. 38).

This case is currently in the discovery phase.  In the instant motion, Plaintiffs move the Court for an order compelling Defendants to produce opinions of counsel and related documents. Specifically, Plaintiffs seek production of a document described as the "eye positioning memo," any underlying opinions of counsel, and all related documents and work product.

According to Plaintiffs, discovery has revealed a November 9, 2009 memorandum prepared by the Paladin Marketing Firm that documents "that Defendants disclosed an opinion of counsel to Paladin, and that Paladin further disclosed the opinion to one or more unrelated third parties."  (Ex. 1, Doc. 100, the "Paladin Memo").  Paladin had been hired by Defendants to help market and sell its astaxanthin products to new customers, and approached several companies in the field of eye health.  (Ex 1, Doc. 100).  The Paladin Memo describes Paladin's strategy, describes how potential customers "pretty much looked at our eye positioning memo and ripped it up," and describes concerns about litigation, particularly Plaintiffs being "on the war path with lawsuits."  (Ex. 1, Doc. 100).  It also describes that a particular potential customer "was dubious to say the least of our legal council's findings," and "suggested we were treading in dangerous waters and he held no confidence in Cyanotch's indications from that memo."  (Ex. 1, Doc. 100).

In light of the references in the Paladin Memo, Plaintiffs seek to compel the "eye positioning memo," as well as the underlying opinions of counsel and related documents.  In response, Defendants state that they have already disclosed the eye positioning memo in discovery.  As to the opinions of counsel, namely a document described as the "Darby Opinion," Defendants assert the work-product doctrine.  Because it appears Plaintiffs' motion is moot with regard to the eye positioning memo, the Court will focus its discussion on the Darby Opinion, opinions of counsel, and the work product doctrine.

## II.    DISCUSSION

The work product doctrine protects against the disclosure of documents that are prepared in anticipation of litigation "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed.R.Civ.P. 26(b)(3)(A).  In the event discovery of these documents is ordered, the court must, nevertheless, prevent the disclosure of "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed.R.Civ.P. 26(b)(3)(B).  The party asserting its protection bears the burden of establishing the application of the doctrine.  *See Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 (M.D.Fla.1990)(citing *BarclaysAmerican Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir.1984)).

The language "anticipation of litigation" has been construed to mean "not necessarily imminent . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation."  *Lockheed Martin Corp. v. L-3 Commc'ns Corp.*, No. 6:05-cv-1580-Orl-31KRS, 2007 WL 2209250, at *8-9 (M.D.Fla. July 29, 2007) (quoting from *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.1981)).  Other federal courts have followed suit, articulating that litigation need not be imminent, but rather a "real possibility" at the time the

documents in question are prepared. *See Evergreen Trading, LLC v. United States*, 80 Fed. Cl. 122, 132 (Ct.Fed.Cl.2007).

In support of their reliance on the work product doctrine, Defendants have filed the Affidavit of Gerald Cysewski, Chief Science Officer and Executive Vice President of Cyanotech Corporation. (Doc. 112-1). He states that, on May 13, 2009, he contacted George Darby, Esq., Cyanotech's patent counsel regarding his concerns over threats of litigation made by Rudi Moerck, the President and CEO of Valensa International. (Doc. 112-1, ¶ 2). Based upon those threats, he asked Mr. Darby to review the Tso Patent and provide an opinion as to Cyanotech's potential exposure to patent infringement litigation. (Doc. 112-1, ¶ 2.). Mr. Cysewski further states that Cyanotech anticipated future litigation at the time he ordered the Darby Opinion, and that the primary purpose was to aid in possible future litigation. (Doc. 112-1, ¶¶ 4-5). Mr. Darby provided his initial opinion on May 14, 2009, and later supplemented it on June 30, 2009. (Doc. 112-1, ¶ 3).

Plaintiffs offer nothing to contradict Mr. Cysewski's affidavit. Rather, Plaintiffs merely argue that the timing of the 2009 opinion is inconsistent with it being prepared in anticipation of this litigation, which commenced in June 2012. The Court finds that argument unpersuasive. The documents relied upon by Plaintiffs in support of their motion, namely the Paladin Memo dated November 5, 2009, specifically reference Defendants' concerns over litigation. (Doc. 101-1). Moreover, Defendants could not be expected to anticipate precisely whether or when Plaintiffs might initiate litigation. Mr. Cysewski's affidavit, as well as the Paladin Memo, demonstrate that the Darby Opinion was prepared in anticipation of litigation, specifically litigation regarding the Tso Patent. For these reasons, the Court agrees that the Darby Opinion is protected from disclosure by the work product doctrine.

Plaintiffs, however, contend that Defendants have waived the work product protection by disclosing the opinions of counsel to its marketing agency, which in turn disseminated the opinions to potential customers.  Plaintiffs contend this is significant because the parties were marketing the same products to some of the very same potential customers identified in the Paladin memo at the very same time.

As noted by *Chick–fil–A v. ExxonMobil Corp.*, "[t]here is very little primary authority from the Eleventh Circuit Court of Appeals on what constitutes waiver of the work product privilege."  2009 WL 3763032, No. 08–61422–CIV, at *3 (S.D.Fla. Nov. 10, 2009) (citing *Wood v. Archbold Med. Ctr., Inc.*, 2009 WL 3063392, No. 7:07–CV–109, at *2 (S.D.Ga. Sept. 17, 2009)).  Courts have found that "[w]ork-product protection is waived when protected materials are disclosed in a way that 'substantially increases the opportunity for potential adversaries to obtain the information.'"  *Stern v. O'Quinn*, 253 F.R.D. 663, 681 (S.D.Fla.2008) (quoting *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 587 (N.D.N.Y.1989)).  Courts focus on disclosure to opposing parties, not necessarily other persons.  As Chick–fil–A observed, "[T]he overwhelming majority of persuasive authority from other circuits holds that voluntary disclosure of work product information to an adversary waives work product protection as to that information."  *Chick–fil–A*, 2009 WL 3763032, at *3 (emphasis added) (citing *Wood*, 2009 WL 3063392, at *2 (citing circuit cases from the First, Third, Eighth, and D.C. Circuit Courts of Appeals)).  Accordingly, "not every situation in which work-product materials are disclosed warrants a finding of waiver."  *Stern*, 253 F.R.D. at 681.  Instead, the circumstances, as a whole, must be considered: that is, "the circumstances surrounding the disclosure are key to determining whether an actual waiver of the workproduct protection has occurred."  *Id*.  In this regard, "work-product protection is waived when protected materials are

'disclosed in a manner [that] is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information.' " *Id*.

Here, Plaintiffs argue that the opinion of counsel was "freely disseminated in the fall of 2009 to [Defendants'] marketing agency, and from there to potential customers," citing the Paladin Memo. (Ex. 1 to Doc. 101). Plaintiffs contend that Defendants made absolutely no attempt to protect the confidentiality of its opinions of counsel, and that it could not be reasonably expected that future use of the information would be limited. (Doc. 100, p. 10).

In response, Defendants argue that Plaintiffs blur the lines between the way the eye positioning memo was disseminated, and how the Darby Opinion was disseminated. As Defendants argue, the disclosure of the eye positioning memo to numerous third-parties cannot form the basis for a waiver as to the Darby Opinion.

Defendants concede that the Darby Opinion was disclosed to Paladin on November 10, 2009, but was provided in confidence and without authorization to disseminate the opinion without Defendants' approval. Indeed, Defendants cite the "Paladin Agreement," which governs the representative relationship between Paladin and Cyanotech, and contains confidentiality provisions relating to proprietary information and non-disclosure. (Ex. B to Doc. 112). Defendants contend that the Darby Opinion was not disclosed outside of the "cloister of confidentiality," therefore the work product privilege has not been waived, evidently citing *Gutter v. E.I. Dupont de Nemours & Co.*, 1998 WL 2017926 (S.D.Fla. May 18, 1998) ("if it is clear that the information contained in the document was intended to be disseminated to those outside the cloister of confidentiality, then the privilege is waived.").

Notably, Plaintiffs have not pointed to anything in the record that contradicts Defendants' assertions regarding the limited dissemination of the Darby Opinion, or Defendants' assertions that the Darby Opinion was disclosed under the terms of a confidentiality agreement. Accordingly, under the circumstances described above, the Court finds that Defendants did not waive the work product privilege with regard to the Darby Opinion.

Plaintiffs, however, also apparently seek to compel other, unspecified opinions of counsel that they contend are referenced in the Paladin Memo.  As a primary matter, it is not clear that such documents exist, aside from the Darby Opinion.  The Paladin Memo (Doc. 101-1) contains references regarding potential customers' impressions regarding Defendants' legal counsel's findings.  Yet, it is unclear whether those references pertain merely to the eye positioning memo, or perhaps to oral discussions conducted during a face to face meeting between Paladin representatives and executives of customer corporations.  For example, the author of the Paladin Memo concludes, "I have serious misgivings having heard Max and Bretts' take from a face to face meeting last month."  (Doc. 101-1).  In other words, Plaintiffs have not established, and Defendants have not acknowledged the existence and dissemination of documents containing opinions of counsel aside from the Darby Opinion that has already been discussed.  If additional documents containing opinions of counsel exist, and discovery reveals that they were distributed to customers such as the those listed in the Paladin memo, depending on the circumstances, such disclosure may indeed constitute waiver of the work product privilege.  On the record currently before the Court, however, there is no basis upon which to grant Plaintiffs' motion to compel, with regard to either the Darby Opinion or unspecified opinions of counsel.

### III.     CONCLUSION

For the reasons explained above, Plaintiffs Motion to Compel Production of Opinions of

Counsel (Doc. 100) is DENIED.

**DONE** and **ORDERED** in Ocala, Florida on February 19, 2014.

_____

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties