UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

U.S. NUTRACEUTICALS, LLC, a Florida
limited liability corporation d/b/a VALENSA
INTERNATIONAL, and THE BOARD OF
TRUSTEES OF THE UNIVERSITY OF
ILLINOIS

    Plaintiffs/Counter Defendants

-vs-                                                               Case No. 5:12-cv-366-Oc-10PRL

CYANOTECH CORPORATION, a Nevada
corporation, and NUTREX HAWAII, INC.

    Defendants/Counter Plaintiffs.
_____

# O R D E R

Plaintiffs U.S. Nutraceuticals, LLC, d/b/a Valensa International ("Valensa"), a Florida Corporation with its principal place of business in Eustis, Florida, and the Board of Trustees of the University of Illinois ("University of Illinois"), have filed a complaint for patent infringement against Defendants Cyanotech Corporation ("Cyanotech"), a Nevada Corporation with its offices in Kailua-Kona, Hawaii, and Cyanotech's wholly-owned subsidiary, Nutrex Hawaii, Inc., ("Nutrex"), a Hawaiian corporation (Doc. 1).

On April 15, 2013, Cyanotech and Nutrex filed their Answer and Counterclaims asserting a claim for declaratory relief and a claim for unfair competition in violation of Hawaii law (Doc. 38). Valensa and the University of Illinois moved to dismiss the unfair competition counterclaim (Doc. 45). In response, Cyanotech and Nutrex filed an Amended

Counterclaim (Doc. 48), asserting three counterclaims against the Plaintiffs:  (1) a claim for declaratory judgment that the Defendants have not infringed the Plaintiffs' patent and/or that the patent is invalid; (2) a claim for unfair competition under Haw. Rev. Stat. § 480-2; and (3) a claim that the Plaintiffs have violated § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The filing of the Amended Counterclaims render the Plaintiffs' prior motion to dismiss (Doc. 46) moot, and it will be denied as such.

The case is now before the Court on the Plaintiffs' motion to dismiss the Defendants' unfair competition and Lanham Act counterclaims for failure to state a claim (Doc. 49).  The Defendants have filed a response (Doc. 50), and the motion is therefore ripe for disposition.

For the reasons discussed below, the Court concludes that the motion to dismiss is due to be granted, and these counterclaims shall be dismissed with leave to amend.

## **Background**

The relevant facts are taken from the Defendants' amended counterclaim and answer.  Astaxanthin is a naturally occurring product long known for its antioxidant properties and its ability to neutralize free radicals, promote eye health, protect against sunburn, and protect against other types of photic or "sun" damage. On June 18, 1996, the United States granted U.S. Patent No. 5,527,533, entitled "Method of Retarding and Ameliorating Central Nervous System and Eye Damage" to Dr. Mark O. M. Tso (the "Tso Patent").[1]  The Tso Patent covers certain methods of using astaxanthin in relation to the

---

[1] The Defendants allege that the Patent was not validly issued.

eyes, including, but not limited to, methods of improving vision and treating and protecting against retinal damage, injury, and disease, including macular degeneration. The Tso Patent also covers methods of using a "therapeutically-effective amount" of astaxanthin, with such dosage ranging from 10 to 200 milligrams per kilogram of body weight. However, the Tso Patent does not contain any claims relating to a device, apparatus, or chemical composition. The University of Illinois is the assignee and owner of the Tso Patent. Valensa is an exclusive licensee of the Tso Patent, and has the exclusive right to market dietary supplement astaxanthin products under the Tso Patent.

Cyanotech and its wholly-owned subsidiary, Nutrex, are manufacturers and sellers of nutraceutical ingredients and products, including astaxanthin products. They compete, both directly and indirectly, against Valensa, particularly with respect to the manufacture and sale of astaxanthin products. The Defendants produce and sell such products to consumers, as well as to other nutraceutical companies that repackage and rebrand the products as their own and/or incorporate Cyanotech-supplied astaxanthin into their own retail dosage form products.

On June 29, 2012, the Plaintiffs filed a complaint against the Defendants alleging that they infringed the Tso Patent by manufacturing, offering for sale, selling, and/or importing astaxanthin products with the specific intent and suggestion that users of those products employ them in methods that are covered by one or more claims of the Tso Patent (Doc. 1). After the Court resolved several motions to dismiss and to transfer (Doc.

37), the Defendants answered the complaint on April 15, 2013 (Doc. 38), and filed their amended counterclaims on May 28, 2013 (Doc. 48).

The Defendants allege in their amended counterclaims that the Tso Patent is invalid on its face because the specification of the Patent does not support the claims listed under the Patent, and because the uses of astaxanthin listed in the Patent had been in existence and acknowledged in the medical community for more than 50 years before their purported "discovery" by Dr. Tso. The Defendants further allege that assuming the Tso Patent is valid, it is limited solely to 27 claims encompassing nine different types or methods of treatment of eye conditions using specified therapeutic dosages of astaxanthin. Any other uses or dosages of astaxanthin would not be covered by the claims of the Patent and such uses or dosages could not constitute infringement. Therefore, the Defendants argue that they have not violated the Tso Patent because they do not treat any individuals with astaxanthin for any medical condition, nor do they sell or manufacture astaxanthin for use in any of the methods described in the Tso Patent. Rather, they only sell and manufacture astaxanthin for preventative and prophylactic purposes. The Defendants also allege that they have not knowingly or intentionally induced any third party to medically treat himself or herself or any other person suffering from eye disease with Cyantoech's astaxanthin product. Further, the Defendants' retail formulations for their astaxanthin products are between 4 and 12 milligrams per person per day, far below the therapeutic dosages recommended in the Tso Patent.

The Defendants contend that at all relevant times, Valensa was aware of the manner in which the Defendants sold and manufactured astaxanthin products, as well as the uses for which the Defendants marketed the products. Nevertheless, Valensa, in bad faith, made numerous material misrepresentations about the validity of the Tso Patent, and the Defendants' asserted infringement of the Patent. For example, Valensa has repeatedly and publicly alleged that its Tso Patent is valid, that it covers the Defendants' manufacture and sale of astaxanthin products, and that the Defendants have infringed the Patent. Valensa also allegedly repeatedly threatened to file a patent infringement lawsuit against the Defendants, their distributors, and other parties who supply astaxanthin as an ingredient in nutritional supplement formulations for use in eye health.

The Defendants further allege that on multiple occasions between 2010 and 2012, Plaintiffs' authorized representatives, including Valensa's president, Rudi Moerck, made materially false statements, both orally and in writing, to the Defendants' representatives, including Cyanotech's CEO, Brent Bailey, that the use of astaxanthin products as a preventative measure to maintain eye health infringed the Tso Patent. The Defendants allege that these claims were objectively baseless as the Plaintiffs knew or should have known at the time that the Defendants had not infringed the Patent, and that the Tso Patent was invalid. The Defendants repeatedly asked Valensa to explain its interpretation of the breadth of the Tso Patent, but Valensa refused to reply.

In addition, Valensa repeatedly threatened to shut down Cyanotech's business and to embroil the Defendants in prohibitively expensive patent litigation if the Defendants did

5

not agree to purchase a license of the Tso Patent to sell and/or promote the use of astaxanthin products for eye health (as distinct from therapeutic treatment of retinal injury or disease). The Defendants further allege that the Plaintiffs have made similar false claims and threats to other producers, buyers, and sellers of astaxanthin products for the purpose of unlawfully restricting competition and gaining an unfair competitive advantage.

The Defendants contend that there is no plausible argument that Valensa could make which would give weight to their claims of patent infringement because the Tso Patent is limited to "therapeutic" or "treating" uses of astaxanthin. The Defendants, however, have allegedly limited their activities to include prophylactic or protective uses of astaxanthin. Because Valensa was aware of these facts, their claims of patent infringement were objectively baseless.

The Defendants allege that Valensa's actions have interfered with their business operations and cost them lost sales and price erosion. They also allege that Valensa has damaged the Defendants' reputation in the marketplace by falsely and publicly accusing the Defendants of patent infringement. The Defendants seek compensatory and statutory damages under Hawaii law, and declaratory, injunctive, and monetary relief under the Lanham Act, 15 U.S.C. § 1115, *et seq.*

The Defendants seek relief against both Valensa and the University of Illinois. However, the Defendants do not allege that the University of Illinois directly engaged in any threats or statements concerning potential patent infringement. Rather, the Defendants merely allege that the University of Illinois implicitly and explicitly authorized and/or ratified

Valensa's actions by joining this patent lawsuit as a party-Plaintiff, and that the University engaged in numerous communications with Valensa with respect to the enforcement of the Tso Patent against the Defendants.

## **Standard of Review**

The Plaintiffs seek dismissal of the Defendants' counterclaims on the grounds that they do not sufficiently allege claims for relief pursuant to Fed. R. Civ. P. 12(b)(6). Such motions are evaluated in the same manner as a motion to dismiss a complaint, and in passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968). For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences that might be drawn from such allegations. Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1379 (11th Cir. 2010); Jackson v. Okaloosa County, Fla., 21 F.3d 1532, 1534 (11th Cir.1994). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

In order to avoid dismissal, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" and that rises "above the speculative level." Speaker,

623 F.3d at 1380 (citing <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. at 1964–65, 1974). A claim is facially plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). The plausibility standard requires that a plaintiff allege sufficient facts to nudge his "claims across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. at 1974. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Ashcroft</u>, 556 U.S. at 678, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. at 1964-65).

## Discussion

<u>I.</u>   Shotgun Pleading

The Court first notes that the Defendants' amended counterclaims improperly utilize a "shotgun pleading" method condemned by the Eleventh Circuit and Fed. R. Civ. P. 8 and 10. A shotgun complaint "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." <u>Strategic Income Fund, L.L.C. v. Spear, Leeds, & Kellogg Corp.</u>, 305 F.3d 1293, 1295 (11th Cir. 2002). <u>See</u> also <u>Cramer v. State of Florida</u>, 117 F.3d 1258, 1263 (11th Cir. 1997). For both the unfair competition

and Lanham Act counterclaims, the Defendants "re-aver and re-allege the allegations of the preceding paragraphs of their counterclaims and the allegations of their affirmative defenses as if fully set forth herein." (Doc. 48, pp. 11, 14).  As a result, the Court is faced with a pleading that incorporates facts that are irrelevant to other counterclaims, and combines and incorporates different legal theories and conclusions.  This forces the Court to sift through the facts and legal theories presented and decide for itself which facts are material for which claims asserted, "a difficult and laborious task indeed."  Pelletier v. Zweifel, 921 F.2d 1465, 1518 (11th Cir. 1991).  Such defective pleading alone provides sufficient reason for the Court to dismiss the Defendants' unfair competition and Lanham Act counterclaims.

## II.  Federal Preemption

The Defendants claim that the Plaintiffs' actions in threatening litigation and publicizing the Defendants' alleged infringement of the Tso Patent constitute unfair competition in trade or commerce in violation of Haw. Rev. Stat. § 480-2, and false or misleading representations of fact in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  The Plaintiffs argue that both claims must be dismissed with prejudice because they are preempted by federal patent law.[2]

"[F]ederal patent law preempts state-law tort liability for a patentholders' good faith conduct in communications asserting infringement of its patent and warning about potential

---

[2] The Parties do not dispute that federal patent law governs the patent infringement claim and counterclaim.

litigation." Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367, 1374 (Fed. Cir. 2004). Such preemption encompasses state-law tort liability for claims of unfair competition. See Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH, 524 F.3d 1254 (Fed. Cir. 2008); Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp., 459 F.3d 1311 (Fed. Cir. 2006). "State tort claims against a patent holder, . . . based on enforcing a patent in the marketplace, are 'preempted' by federal patent laws, unless the claimant can show that the patent holder acted in 'bad faith' in the publication or enforcement of its patent." 800 Adept, Inc. v. Murex Securities, Ltd., 539 F.3d 1354, 1369 (Fed. Cir. 2008) (citing Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1355 (Fed. Cir. 1999) and Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1336-37 (Fed. Cir. 1998)). As the Supreme Court noted: "Patents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in the courts. Such action, considered by itself, cannot be said to be illegal." Virtue v. Creamery Package Mfg. Co., 227 U.S. 8, 37-38, 33 S. Ct. 202, 208 (1913). "Indeed, a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are." Mikohn Gaming Corp. v. Acres Gaming, Inc., 165 F.3d 891, 897 (Fed. Cir. 1998) (internal quotations omitted).

In other words, a patent owner is entitled to notify infringers, distributors, customers, and potential customers of its patent rights without being subject to state-tort litigation unless the communications are made in bad faith. GP Indus., Inc. v. Eran Indus., Inc., 500 F.3d 1369, 1374 (Fed. Cir. 2007). To avoid preemption, a party seeking to assert state-tort

liability must allege and ultimately prove bad faith, "even if bad faith is not otherwise an element of the tort claim." Serio-Us Indus., 459 F.3d at 1320. This same analysis applies to claims asserting liability under § 43(a) of the Lanham Act. Id. at 1321 ("Because of the tension between federal patent law and a Lanham Act claim for unfair competition, this court previously concluded that it will impose § 43(a) liability on a patentee for marketplace statements only if the statements are proven to have been made in bad faith." (citing Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1354-55 (Fed. Cir. 1999)).

"Exactly what constitutes bad faith remains to be determined on a case by case basis." Zenith, 182 F.3d at 1354. However, the analysis involves both an objective and subjective component. 800 Adept, 539 F.3d at 1370. "Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear cut case of bad faith representations is made out." Zenith, 182 F.3d at 1354. "Although 'bad faith' may encompass subjective as well as objective considerations, and the patentholder's notice is not irrelevant to a determination of bad faith, a competitive commercial purpose is not of itself improper, and bad faith is not supported when the information is objectively accurate." Mikohn Gaming, 165 F.3d at 897. "In general, a threshold showing of incorrectness or falsity, or disregard for either, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights." Id.

The Federal Circuit has further held that, with respect to assessing whether a state law claim is preempted, "a bad faith standard cannot be satisfied in the absence of a

11

showing that the claims asserted were objectively baseless." GP Indus., 500 F.3d at 1369. "The Supreme Court elaborated on the meaning of 'objectively baseless,' explaining that 'the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits.'" Id. (quoting Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60, 113 S. Ct. 1920 (1993)). See also Globetrotter Software, Inc., 362 F.3d at 1377.

Turning to the amended counterclaims, the Defendants have alleged that at the time the Plaintiffs made their threats and misrepresentations to the Defendants and others, the Plaintiffs were actually aware both that the Tso Patent was invalid, and that the Defendants were not engaging in infringing conduct. Taking these broad allegations as true for purposes of resolving a motion to dismiss, the Court will assume that they are sufficient to satisfy the subjective component of the bad faith analysis.

The Defendants have not, however, satisfied the objective component. The Defendants rely again on the same facts previously asserted - that the Plaintiffs knew that their Patent was invalid and that they knew that the Defendants' actions were not infringing the Tso Patent. However, the Defendants ignore the fact that they have admitted in their answer that on several occasions, they marketed and publicized the use of astaxanthin for treating and preventing diseases of the eye. For example, the Defendants have admitted that their Medical Director, Dr. Robert Corish, gave a presentation at the nation's largest health supplement convention, during which he specifically referenced Dr. Tso and the Tso Patent, and discussed the use of Cyanotech's astaxanthin products for the treatment and

prevention of macular degeneration, light-induced eye damage, eye strain and fatigue, as well as for the promotion of visual acuity. See Doc. 1, ¶ 25; Doc. 38, ¶ 25. The Defendants have further admitted that they have instructed customers and consumers to use their astaxanthin products to improve and protect vision through their advertising and marketing materials. See Doc. 1, ¶ 26; Doc. 38, ¶ 26. These materials specifically reference the ameliorative effects astaxanthin can have on macular degeneration, and explicitly discuss Dr. Tso's research by name. These statements directly cover the various methods of treatment listed in the Tso Patent, including the method of treating an individual suffering from age-related macular degeneration (method 1), and administering a therapeutically effective amount of astaxanthin to the individual to protect neurons in a retina of the individual from free-radical induced retinal injury (method 13). See Doc. 1, Ex. A.

While admitting that they made these statements and produced such advertising materials, the Defendants argue that such actions do not infringe the Tso Patent. However, such arguments merely create fact issues to be resolved at trial. Given the Defendants' admitted comments advertising the astaxanthin products, the Court cannot say that the Plaintiff's lawsuit is so objectively baseless that no reasonable litigant could realistically expect success on the merits. See Mikohn Gaming Corp., 165 F.3d at 897 ("Indeed, a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are.") (internal quotations omitted). See also Matthews Intern. Corp. v. Biosafe Engineering, LLC, 695 F.3d 1322, 1332-33 (Fed. Cir. 2012) (affirming dismissal of state-

law claims as preempted for failure to sufficiently plead bad faith because there was nothing in the complaint demonstrating that the alleged infringement allegations by the patentholder were so unreasonable as to be objectively baseless); Metris U.S.A., Inc. v. Faro Technologies, Inc., 882 F. Supp.2d 160, 176 (D. Mass. 2011) (finding that patentholder who sent emails to alleged infringer threatening to put infringer out of business may suggest subjective bad faith, but do not demonstrate that the enforcement of the patent was objectively baseless); Applera Corp. v. Michigan Diagnostics, LLC, 594 F. Supp.2d 150, 161 (D. Mass. 2009) (dismissing § 43(a) Lanham Act counterclaim for failure to plausible demonstrate objective bad faith where counterclaim consisted of conclusory allegations that patentholder knew at the time it brought its infringement suit that its patents were invalid and/or that their was no infringement of them).  And with respect to the question of the validity of the Tso Patent, the Defendants have not alleged any facts demonstrating such invalidity.  Rather, they simply argue that the Plaintiffs "knew or should have known" of the purported invalidity.  See Sandisk Corp. v. LSI Corp., 2009 WL 3047375 at * 2-3 (N.D. Cal. Sept. 18, 2009).[3]

---

[3]It would seem that the patent invalidity argument only further supports a finding of preemption.  For, in order to pursue and succeed on a claim for unfair competition under the theories alleged by the Defendants, it would be necessary to first determine whether the patent itself is valid, which requires a review and application of federal patent law.  If the patent is valid, then the Plaintiffs' alleged actions taken to protect their patent would have been reasonable and taken in good faith.  And even if the patent is found to be invalid, unless the evidence demonstrates that the Plaintiffs were aware of such invalidity from the inception of the Patent, it would be very difficult to find that the Plaintiffs were not acting in good faith.  In other words, the state-law and Lanham Act counterclaims – at least as presently alleged – rise and fall with the patent claims.

The Court therefore finds that the state-law unfair competition and Lanham Act claims as alleged are both preempted and shall be dismissed.

### III. Counterclaims Against the University of Illinois

Assuming arguendo that the Defendants had sufficiently asserted bad faith such that their claims were not preempted, they could not go forward against the University of Illinois because the counterclaims do not assert any facts specific to the University of Illinois, nor have the Plaintiffs alleged any actions or wrongdoing by the University. Rather, they rest their entire theories of relief upon two broad conclusory allegations: first, that "upon information and belief," Valensa was acting as the agent of the University of Illinois, and that any of Valensa's actions can be imputed to the University; and second, that the University can be held liable simply by being a party-Plaintiff to this action. Such overly broad and unsupported legal conclusions are not sufficient to satisfy Twombly and its progeny, and constitute another reason for dismissal of the Defendants' counterclaims.

## Conclusion

Accordingly, upon due consideration, it is hereby ORDERED as follows:

(1) The Plaintiffs' Motion to Dismiss Count II of Defendants' Answer to Complaint and Counterclaims (Doc. 46) is DENIED AS MOOT.

(2) The Plaintiffs' Motion to Dismiss Counts II and III of Defendants' Amended Counterclaims (Doc. 49) is GRANTED.

(3)     Counts II (the unfair competition claim) and III (the Lanham Act claim) of the Defendants' Amended Counterclaim (Doc. 48) are DISMISSED.  Within twenty (20) days from the date of this Order, the Defendants may file a second amended counterclaim.  The Defendants may not use this opportunity to assert new counterclaims based on different legal theories.  Rather, this is an opportunity to replead the two dismissed counterclaims and correct the deficiencies discussed in this Order.  In addition, if the Defendants choose to replead either or both of these two counterclaims, they should ensure that they comply with the Eleventh Circuit's case law on shotgun pleadings.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 19th day of March, 2014.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya A. McSheehy