## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

U.S. NUTRACEUTICALS, LLC
dba VALENSA INTERNATIONAL;
and THE BOARD OF TRUSTEES
OF THE UNIVERSITY OF ILLINOIS

               Plaintiffs

    v.

CYANOTECH CORPORATION
and NUTREX HAWAII, INC.

               Defendants

Civil Action No. 5:12-cv-366-WTH-PRL

# Defendants Cyanotech and Nutrex's Second Amended Counterclaims

Pursuant to this Court's Order of March 19, 2014, Defendants Cyanotech Corporation ("Cyanotech") and Nutrex Hawaii, Inc. ("Nutrex") (collectively, "Defendants") assert the following Second Amended Counterclaims against Plaintiffs U.S. Nutraceuticals LLC dba Valensa International ("Valensa") and the Board of Trustees of The University of Illinois ("the University of Illinois") (collectively, "Plaintiffs"):

### JURISDICTION

1.      Valensa is a limited liability corporation formed under the laws of the State of Florida and has a principal place of business at 2751 Nutra Lane, Eustis, Florida 32726.

2.      The University of Illinois is a body corporate and politic of the State of Illinois with a place of business at 352 Henry Administration Building, MC-350, 506 South Wright Street, Urbana, IL 61801.

3.      Cyanotech is a publicly-traded corporation formed under the laws of the State of Nevada with a principal place of business at 73-4460 Queen Kaahumanu Highway, Suite 102, Kailua-Kona, Hawaii 96740.

4.      Nutrex is a corporation formed under the laws of the State of Hawaii with a principal place of business at 73-4460 Queen Kaahumanu Highway, Suite 102, Kailua-Kona, Hawaii 96740.

5.      This Court has original jurisdiction over these counterclaims pursuant to 28 U.S.C. §§1331, 1332, and 1338(a) and (b); and 15 U.S.C. §§ 1121, 1122 and 1125(a) because:  this action involves claims under the laws of the United States, namely the Patent Code, 35 U.S.C. §1, *et seq*., and the Lanham Act, 15 U.S.C. §1051, *et seq.;* because there is complete diversity between the parties and the claims exceed $75,000.00, exclusive of interest and costs; and because these counterclaims assert a claim for unfair competition joined with a substantially related claim arising under the patent laws of the United States.

6.      Invocation of the Declaratory Judgment Act, 28 U.S.C. §§2201-2202, is appropriate because Defendants have been expressly threatened by Plaintiffs with a baseless claim of infringement of the Patent-in-Suit, U.S. Patent No. 5,527,533 ("the '533 Patent" or "the Tso Patent").  The '533 Patent is also invalid for failure to comply with 35 U.S.C. §§102, 103 and 112.  The '533 claims are not novel; they are anticipated or rendered obvious by the prior art; and the Tso specification does not support the claims.

7.      In addition to exclusive jurisdiction with regard to the asserted federal patent and unfair competition claims, this Court has supplemental jurisdiction under 28 U.S.C.

OCS-2327824

§1367(a) over all claims for relief that are so related to the patent claims that they form part of the same case or controversy.

## COUNT I

### (Declaratory Judgment of Non-Infringement and Invalidity)

8.    There is an actual and justiciable controversy between Plaintiffs and Defendants with respect to infringement and validity of the '533 Patent.  The controversy between the parties has adverse legal interests of such sufficient immediacy to warrant a declaratory action.

9.    Defendants have been repeatedly charged by Plaintiffs with engaging in allegedly infringing activities, including by this lawsuit.

10.    In order to infringe, an accused product or method must meet every limitation of one or more claims of the patent in suit, either literally or under the doctrine of equivalents.  The doctrine of equivalents is limited by file history estoppel which precludes a patentee from reclaiming patent scope relinquished during prosecution.

11.    The broad scope of the originally filed application for the Tso patent was given up in order to obtain patent allowance.

12.    The only Tso patent claims that were allowed are "method of use" claims. They address a method of "treating an individual" with a retinal "disease," "damage," or "injury," or who is suffering from "macular degeneration," by "administering a therapeutically-effective amount" of astaxanthin.

3

13.     Cyanotech, as a manufacturer, does not treat any individuals with astaxanthin or any other substance for any medical condition.  It therefore cannot directly infringe any of the method of use of claims of the '533 Patent.

14.     In order to indirectly infringe the '533 Patent, there must be another person or entity who directly infringes the '533 claims by treating individuals suffering from eye related disease, injury or damage with a "therapeutically-effective" dose of astaxanthin.

15.     Valensa has not shown that Defendants were aware of and knowingly and intentionally induced such medical treatment in a "therapeutically-effective" dose with the intent of causing infringement of the '533 Patent.

16.     Defendants have not knowingly and intentionally induced any third party to medically treat himself  or herself or another person suffering from eye disease with Cyanotech's astaxanthin product, knowing that such treatment would infringe a claim of the '533 Patent.

17.     Defendants have neither:  (a) actively induced anyone to use Valensa's astaxanthin in an infringing manner; nor (b) sold or imported astaxanthin or astaxanthin products for use in practicing the Tso '533 process, knowing that such products have been especially made or especially adapted for use in any such infringement.

18.     Astaxanthin is not "especially made or especially adapted" for the purpose treating patients suffering from eye disease.  On the contrary, astaxanthin is a staple commodity suitable for multiple other non-infringing uses, e.g., as a prophylactic to avoid injury, such as reducing the prospective effects of sunburn, to promote generic eye health and

4

for many other uses related to astaxanthin's antioxidant properties.  These facts preclude contributory infringement.

19.    All 27 claims of the '533 Patent require "treating an individual" with a retinal "disease," "damage," or "injury" by "administering a therapeutically-effective amount" of astaxanthin.

20.    The '533 Tso patent has nine independent claims.  They are all method of use claims.  No device, apparatus, or chemical composition is claimed.  Those nine claims are:

1.    A method of *treating* an individual suffering from retinal damage or retinal disease, said method comprising administering a therapeutically effective amount of astaxanthin to the individual to improve the vision of the individual.

13.    A method of *treating an individual* comprising administering a therapeutically effective amount of astaxanthin to the individual to protect neurons in a retina of the individual from free-radical induced retinal injury.

14.    A method of *treating an individual suffering from* neuronal damage to a retina comprising administering a therapeutically-effective amount of astaxanthin to the individual to improve the condition of the retina.

16.    A method of treating *an individual suffering from* age-related macular degeneration comprising administering a therapeutically-effective amount of astaxanthin to the individual to retard the progress of age-related macular degeneration.

17.    A method of treating *an individual suffering from* an ischemic or intraocular pressure-related disease of a retina comprising administering a therapeutically-effective amount of astaxanthin to the individual to improve the condition of the retina and to prevent further damage to the retina.

19.    A method of treating *an individual suffering from* an inflammatory disease of a retina comprising administering a therapeutically effective amount of astaxanthin to the individual to improve the condition of the retina and to prevent further damage to the retina.

21.    A method of treating *an individual suffering from* a free radical-induced injury to a central nervous system, said method comprising

OCS-2327824

administering a therapeutically-effective amount of astaxanthin to the individual to improve the condition of the central nervous system.

26.     A method of *treating an individual suffering from* a degenerative retinal disease, said method comprising administering a therapeutically effective amount of astaxanthin to the individual to retard the progress of the disease.

27.     A method of *treating an individual suffering from* a degenerative central nervous system disease of a brain or spinal cord, said method comprising administering a therapeutically effective amount of astaxanthin to the individual to retard the progress of the disease.

21.     The '533 Patent specification is directed to methods of using a "therapeutically-effective amount" of astaxanthin in "treating individuals suffering from … an eye injury or disease and to methods of retarding a degenerative disease of the eye." Neither the "Summary of the Invention" nor the "Detailed Description of the Preferred Embodiments" describe using astaxanthin as an "eye health" prophylactic for use by healthy individuals; nor do they provide the appropriate dosage for such use.

22.     The Summary of Invention spells out that a "therapeutic dosage" is: ". . . about 5 to about 500 milligrams (mg.) of astaxanthin, and preferably about 10 to about 200 mg, *per kilogram (kg) of body weight* per dose…"  Col. 7, lns. 4-9. There is no support in the specification, claims or file history for any other dosage.  At this dosage, 325/750 mg. to 1.5/3.75 grams of astaxanthin is required to treat a 75 kg. (165 lb.) person.  This dosage is far higher than any formulation recommended for general prophylactic eye health purposes.

23.     The largest daily dosage recommended by the FDA for a dietary supplement is 12 mg./day, regardless of body weight.  This equates to 0.16 mg. of astaxanthin per kg. for a 75 kg. person.

6

24.     Cyanotech's retail formulations are between 4 (the highest dosage recommended by Valensa) and 12 mg. (the highest FDA-approved dose) per person, per day, i.e., 0.053 to 0.16 mg/kg. for a 75kg. person.  Therefore, Cyanotech's customers following Cyanotech's recommendations do not use a "therapeutically effective amount" of astaxanthin as required by every claim of the '533 Patent.

25.     As originally filed, the '533 application included broad claims directed to "beneficiating," and "protecting" the eye, as opposed to "treating" individuals "suffering from" "disease," "damage" or "injury."  However, these claims were twice amended, first to "ameliorating" the vision of an individual …," then to a "treating an individual …."  Each amendment was an effort to address specific examiner rejections.  This process was successful only with the final amendment.

26.     The examiner's January 30, 1995 Office Action No. 1 rejected all 28 claims under 35 U.S.C. §112, second paragraph, as being "indefinite."  Additionally, claims 14-16, 22-26 and 28 were rejected under Section 112, for lack of an enabling disclosure.  Claims 1-24 and 27 were further rejected under 35 U.S.C. §103 as obvious in light of European patent 467,795, an article written by Li, et al in "Current Eye Res." (1991) and U.S. patent 3,920,834, which disclosed the well known use of astaxanthin to obtain protective anti-free radical activity to suppress the adverse effects of solar radiation.  Claims 25-26 and 28 were similarly rejected under 35 U.S.C. §103 as obvious in view of the above prior art plus U.S. patent 5,243,014 which disclosed that carotenoids, such as Vitamin A homologues, e.g. astaxanthin, provide neuroprotective and neurogenerative effects.

7

27.     In response to Office Action 1, Claim 1 was amended by Tso to replace

"beneficiating" with "ameliorating" and to add "retinal," which was also added to claims 6, 9,

10-13, 20, 22 and 27.  "Ischemic insult" to the retina was added to claim 15 and "brain or

spinal cord" was added to claim 28, while claim 16 was deleted entirely.  None of these

amendments satisfied the examiner.

28.     In his September 7, 1995 Office Action, the Examiner repeated his

indefiniteness rejections to all remaining claims, i.e., 1-15 and 17-28, under 35 U.S.C. §112,

second and sixth paragraphs, explaining, that the claim language was still "indefinite for

failing to particularly point out and distinctly claim the subject matter which applicant

regards as his invention," noting further that "ameliorating" "resulted in the same deficiency

as the previously rejected term … "beneficiating."  This rejection was made final.

29.     In response, Tso amended every independent claim to include the italicized

limitations noted in Paragraph 20.  Specifically, claims 13, 14, 17, 18, 20, 22, 27 and 28 were

amended to recite "treating an individual."  Claim 1 was further amended to require an

individual "suffering from retinal damage or retinal disease."  Claims 14, 16, 17, 19, 21, 26,

and 27 were amended to add "treating an individual suffering from…"  These amendments

limited Tso's claims to the treatment of individuals with existing eye injuries or diseases.

Tso gave up any prophylactic function as applied to healthy individuals.

30.     "Treating an individual," which is present in every claim, cannot be expanded

to include prophylactic use.  Such expansion is barred by prosecution history estoppel, which

precludes a patentee from reclaiming patent scope relinquished during prosecution.  See

*Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed.Cir. 2010).

OCS-2327824

31.     Tso's Summary of the Invention uses "treating" in conjunction with "individuals suffering from central nervous system injury or disease."  "Treating" is thereafter always followed by or used in conjunction with "suffering from" and/or "injury," "damage" or "disease."

32.     "Administering a therapeutically effective amount" appears in every claim. "Therapeutically" addresses "healing" or "treating" an "injury or disease."

33.     Claims cannot be given a scope of equivalents that encompasses invalidating prior art.  The prior art to Tso clearly addresses the use of astaxanthin to obtain protection from solar radiation.  "Treating an individual;" "suffering from;" "therapeutically effective amount;" and "damage, disease and/or injury" cannot therefore be broadened to include protection of healthy eyes from solar radiation or free radical activity.

34.     In spite of Tso's narrowing of to the scope of the '533 Patent claims, as described in paragraphs 26-29, Valensa, in bad faith, has threatened Defendants,  Defendants' customers, distributors and other parties who supply astaxanthin as an ingredient in nutritional supplement formulations for use in eye health, with infringement of the '533 Patent based on any uses of astaxanthin for eye health without regard to whether the alleged infringer used or advocated the use of astaxanthin to treat any disease, damage or injury to the retina or central nervous system or to protect neurons in a retina from free-radical induced injury, as required by every claim of the '533 patent.  Plaintiffs knew that the claims of the '533 Patent did not cover the alleged infringing activity and have subsequently admitted under oath that such claims were false and known to be false at the time they were made.

OCS-2327824

35.     35 U.S.C. 112 requires that all claims of a patent be adequately supported by a disclosure in the specification or elsewhere in the original patent application that provides sufficient information to permit one of ordinary skill in the art to practice the invention without undue experimentation.  No dosage for general eye health purposes is provided in the '533 specification.  Accordingly, if read as Valensa asserts, all of the '533 claims are invalid under 35 U.S.C. §112 for lack of enabling support.

36.     The Tso patent specification also provides no support for the claim terms "improve vision" (claim 1), "*improve the condition of the retina*" (claim 14), "retard the *progress of age-related macular degeneration*" (claim 16), or "*improve the condition of the central nervous system*" (clam 21).  None of the italicized phrases nor any equivalent terms appear anywhere in the specification.

37.     There is no support in the Tso specification, as required by Section 112, for the above claim terms or the terms "*protect neurons*" (claim 13), "*prevent further damage to the retina*" (claims 17 and 19) and "retard *the progress of the disease*" (claims 26 and 27).

38.     Each of the '533 claims are invalid under 35 U.S.C. §112, first para.

39.     Tso was not the first to discover the alleged inventions claimed in the '533 Patent.  Those discoveries were made by others a half-century ago, as established by the following prior art patents and publications:

> Grangaud, René, "Astaxanthin Research, New Vitamin A Factor", 69 pp.  (Éditions Desoer, Liège, 1951).

> Massonet, Reneé, "Research into the Biochemistry of Astaxanthin", 146 pp. (F.Fontana, Algiers, 1960).

> Office Actions and Responses (including Declarations) in App. No. 08/330,194.

OCS-2327824

Bibliographic citations and abstracts of the Grangaud and Massonet References, including exemplary searches in Chemical Abstracts print media (1947 to 1965) and online databases (available pre-Critical Date).

Massonet, R., Conquy, T., and Grangaud, R.R.  "The Study of Astaxanthin Transformation into Vitamin A in the Albino Rat: in vitro Experiments", Ann. Nutrit. Alimentation, Vol. 19 pp. pages C655-C658 (1965)), English translation, with translator's Certificate for Exhibits 1008, 1010, 1012, 1014, 1016, and 1018.

Grangaud, René; Massonet, Renée; Conquy Thérèse; and Ridolfo, Jacqueline, "Transformation of Astaxanthin to Vitamin A in the Albino Rat:  Neoformation in vivo and in vitro", Comptes Rendus de l'Academie des Sciences, Vol. 252, pp. 1854-1856 (1961b).

Massonet, R., Conquy, T., and Grangaud, R., "Transformation of astaxanthin to vitamin A by ocular tissue of the rat in vitro", Comptes rendus des seances de la Societe de biologie, Vol. 155, pp. 747-750 (1961a).

Grangaud, R., and Massonet, R., "Antixerophthalmic effect of the esters of astaxanthin", Comptes rendus des seances de la Societe de biologie, Vol. 148, pp. 1392-1394 (1954).

Grangaud, René, and Massonet, Renée, "Antixerophthalmic Activity of the Carotenoid Pigment of the Aristeomorpha foliacea (Penæidæ)", Comptes Rendus de l'Academie des Sciences, Vol. 230, pp. 1319-1321 (March 27, 1950).

Grangaud, René, and Massonet, Renée, "The Action of Shrimp Oil (Penaeus foliaceus) on the Vitamin A Deficient White Rat", Comptes Rendus de l'Academie des Sciences, Vol. 227, pp. 568-570  (1948).

Kurashige, M. et al., "Inhibition of Oxidative Injury of Biological Membranes by Astaxanthin", Physiol. Chem. Phys. and Med. NMR, 22, pp. 27-38 (1990).

U.S. Patent No. 5,310,764 ("Treatment of age related macular degeneration with beta-carotene"), to Baranowitz, et al., issued 10 May 1994.

Schiedt et al., "Recent progress on carotenoid metabolism in animals",  Pure & Appl Chem, Vol. 63, No. 1 pp 89-100 (1991).

40.      Based on the foregoing, Defendants are entitled to a judgment that the Tso

'533 Patent is invalid and that, in any event, Defendants do not infringe such patent.

OCS-2327824

## COUNT II

### (Unfair Competition under HAW.REV.STAT. §480-2)

41.     This claim seeks money damages, declaratory, and injunctive relief arising from Plaintiffs' unfair methods of competition in violation of HAW.REV.STAT. §480-2.

42.     HAW.REV.STAT. §480-2 makes it unlawful for a person to engage in unfair methods of competition in any trade or commerce.  Cyanotech and Nutrex market nutraceutical ingredients and products.  They compete,  directly and indirectly, against Valensa, particularly with respect to the manufacture and sale of astaxanthin products. Defendants produce and sell astaxanthin products to consumers, as well as to other nutraceutical companies that repackage and rebrand the products as their own and/or incorporate Cyanotech-brand astaxanthin in their own retail dosage form products.

43.     Plaintiffs have engaged in unfair methods of competition in violation of HAW.REV.STAT. §480-2 by engaging in a systematic pattern and practice of making wholly baseless infringement threats and intimidating and harassing suppliers and sellers of astaxanthin products in Hawaii and elsewhere, including but not limited to, Defendants.

44.     Specifically, on multiple occasions in the years 2006-2013, Valensa's authorized representatives, including Valensa's president, Rudi Moerck, its Senior Vice President for Business Development, John Minatelli, its Vice President of Sales, Michael Cielensky, and its Director of Sales, Danielle Cook, intentionally made, approved, ratified and/or failed to correct known materially false statements, both orally and in writing, to Defendants' customers, potential customers and distributors, including e.g., Jarrow Formulas and Sedona Labs that, *inter alia*, any use of astaxanthin products for "eye health," including

OCS-2327824

as a preventive or prophylactic measure to maintain eye health, infringes the claims of the '533 patent without regard to whether the alleged infringer used or advocated the use of astaxanthin to treat any disease, damage or injury to the retina or central nervous system or to protect neurons in a retina from free-radical induced injury, as specifically required by every claim of the '533 patent.  Similar communications were also made with other parties such as Forever Living Products, Life Extension, Healthy Directions, LLC, Advanced Theraceuticals, Futurebiotics, Ale-Cera-Living, Fuji Health, and Natural Care

45.     Plaintiffs knew that the claims of the '533 Patent did not cover the alleged infringing activity when they made those assertions and have subsequently admitted under oath in deposition testimony that such claims were inaccurate, overbroad, and false and were known to be false at the time they were made.

46.     In the course of making in its knowingly false claims of infringement, Valensa also made knowingly false claims to Defendants' customers/potential customers/distributors that Valensa had "legal opinions" substantiating the above knowingly false claims of patent infringement, when it had no legal opinions at all relating to the Tso '533 patent, let alone to that effect.   In making its knowingly false infringement claims, Valensa also falsely stated that it had filed and won multiple lawsuits on the Tso '533 patent.  Again, this was knowingly false.

47.     Valensa also publically asserted to the astaxanthin market, including, at a minimum, to a company named Sanofi, that it had worldwide rights on the Tso '533 patent, another false claim.

13

48.     Valensa also wrongfully issued a press release in October 2008, falsely claiming that it had patent rights to a combination of astaxanthin and spirulina.  No such patent was ever issued.

49.     In an email from Mr. Minatelli to Mr. Cielensky and Ms. Cook, copied to Mr. Moerck, Valensa's Senior Vice President advised Mr. Cielensky and Ms. Cook that it was permissible to misrepresent Valensa's IP rights.

50.     In another email exchange, Mr. Minatelli ratified and expounded upon Mr. Cielensky's instructions to Ms. Cook to advise Sedona that they are infringing –  solely on the basis that Sedona had stated that its astaxanthin product promotes long-term eye health, supports optimal retinal health, promotes blood vessel strength and protects the eye from blue light / computer screen.  None of these functions are covered by the Tso patents. In the same communication, Mr. Minatelli also falsely claimed that the Tso patent covered cataracts, a disease of the lens, not the retina.  This statement is also false.

51.     In direct opposition to its false accusations of infringement to the above companies, Valensa stated in multiple signed license agreements from 2008-2012 that it knew of no infringers of the Tso '533 patent even though it was fully aware of the activities it had falsely claimed were infringements.

52.     The Tso '533 patent is also invalid under 35 U.S.C. §112 as non-enabled and for lack of an appropriate written description showing that Tso was in possession of the invention at the time of the filing of the application and because there was no enabling support for its claims.  This lack of support was admitted by Dr. Tso under oath in his deposition.  He was obviously aware of these facts at the time of the alleged invention and

14

the prosecution of the '533 patent.  Dr. Tso was an employee of the University and his knowledge is imputed to it.

53.     Valensa also became aware of these facts via its predecessor in interest, La Haye Laboratories, whose retained expert found that Tso's conclusions about the "therapeutic benefits of astaxanthin" as claimed in the patent were not supported by Tso's experimental data.

54.     Dr. Tso's co-inventor, Dr. Lam, has also acknowledged that he and Tso had not tested the effects of astaxanthin therapeutically.

55.     Plaintiffs are intimately familiar with this lack of required testing.  They have been requested, but refused, to fund such research.  They have also filed U.S. and European patent applications explicitly acknowledging "[astaxanthin] deposition in human retinal tissue has never been confirmed" and that the "[Tso's] work was never confirmed in humans."

56.     Despite their knowledge of the above facts, Plaintiffs have continued to wrongfully assert the knowingly invalid '533 patent against Defendants and others.

57.     Under well-established case law, an invalid patent or patent claim cannot be infringed [*Bose Corp. v. SDI Technologies, Inc.*, No. 2013–1347, 2014 WL 982765 at *7 (Fed.Cir. March 14, 2014)] and further, "[I]f the patentee knows that that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear cut case of bad faith representations is made out."  *Zenith Elecs. Corp. v Exzec, Inc.*, 182 F. 3d 1340, 1354-55 (Fed. Cir. 1999) (addressing unfair competition under the Lanham Act).  See also, *The Wicker Group v Standard Register Co.,* No. 94-1209-

15

A, 1994 WL 761244 at *5 (E.D. Va. Dec. 2, 1994) (patentee's misrepresentations about the scope of its patent rights in asserting patent infringement held sufficient to state a claim for unfair competition under Ohio unfair competition law); *Kapunakea Partners v. Equilon Enterprises LLC*, 679 F.Supp.2d 1203, 1209-10 (D. Hawaii 2009) (Hawaii unfair competition law construed very broadly).  The above and below described conduct also constitutes patent misuse, rendering the '533 patent unenforceable.  "In order for competitive behavior to amount to patent misuse, one must impermissibly broaden  the scope of the patent grant with anticompetitive effect." *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1339 (Fed.Cir. 2006).

58.     Each of Plaintiffs' false claims were made to intimidate various participants in the nutraceutical industry, frequently to force them to enter into exclusive dealing arrangements to purchase all their astaxanthin requirements from Valensa.  Valensa also threatened to embroil such participants in prohibitively expensive patent litigation if they did not capitulate and agree to buy all their astaxanthin requirements from Valensa and/or to purchase a license of the Tso patent from Plaintiffs in order to sell or promote the use of astaxanthin products for "eye health" (as distinct from therapeutic treatment of retinal injury or disease).

59.     The above-described  false claims and threats were all made for the purpose of unlawfully restricting competition, injuring Nutrex, Cyanotech, its shareholders, gaining an unfair competitive advantage, manipulating Cyanotech's stock price and ultimately acquiring Cyanotech at a distressed price, all to the effect of restricting and diminishing competition in the relevant market, i.e., the use of astaxanthin as a human health supplement.  According to Valensa's own Director of Sales, Valensa is one of four major astaxanthin players – the

16

OCS-2327824

others being Israel-based Algatechnologies, Hawaii-based Cyanotech, and Japan's Fuji

Chemical Industry Company via its Scandinavian subsidiary, Astareal.

60.     At the time that Plaintiffs made their knowingly false  statements regarding

the scope and nature of Plaintiffs' patent,  Defendants and others, notably Jarrow Formulas,

repeatedly asked Valensa to explain Valensa's construction of the claims in the '533 patent,

and how Valensa's construction was supported by the specification.  Valensa, in bad faith,

refused to reply.  Rather than reply to Defendants' and Jarrow's legitimate questions, Valensa

continued to threaten infringement litigation in bad faith against Cyanotech, Jarrow and other

participants in the nutraceutical industry in order to obtain an unlawful competitive

advantage.

61.     Plaintiffs' threats of patent infringement were objectively baseless because

there is no plausible argument that the claims of the Tso patent include general eye health  as

opposed to "therapeutically" "treating" specific "diseases", "injuries" or "damage" to the

"retina", "brain" or "spinal cord " as spelled out in  the clear language of the Tso claims and

its file history.  Valensa's President and Vice President have both admitted under oath that

the diseases of the retina covered by the claims of the Tso '533 patent are only one "subset" of

the general category of "eye health", that "eye health" covers a "very broad range of

ophthalmic conditions," that "eye health" is much broader than the Tso patent and that it

would be "inappropriate" to say that the Tso patent covers eye health because the Tso patent

does not cover all aspects of "eye health."

62.     Plaintiffs' infringement accusations are further "objectively baseless" because

the Tso patent is invalid under 35 U.S.C. §§101, 102, 103 and 112 because Tso did not invent

the subject matter claimed in the patent at issue and because the specification of the patent does not support the claims, does not enable the invention and does not show that the alleged inventor was in possession of the invention at the time of its alleged invention. These facts were known by the University and learned by Valensa prior to the conduct complained of herein, yet both continued to wrongfully enforce the patent after being aware of these facts.

63.     Valensa made its objectively baseless infringement claims with the intent to deceive, mislead, harass and intimidate Defendants and others in an effort to gain an unlawful and unfair competitive advantage.

64.     The University of Illinois has implicitly and explicitly authorized and/or ratified these actions by Valensa by, *inter alia,* authorizing and joining in this lawsuit based on a patent which it knew was invalid for lack of written description and enabling disclosure. The University of Illinois and Valensa have also had numerous communications, both orally and in writing, with respect to the enforcement of the invalid Tso patent against Defendants, both knowing that the Tso patent was either invalid and/or not infringed.

65.     In addition to its campaign of intimidating customers and competitors via baseless threats of patent infringement, Valensa also engaged in other specious claims, including litigation against two of its principal competing suppliers of astaxanthin, Algatechnologies and Fuji Chemical Industry Company, based on frivolous claims of product contamination.  In connection with at least the Algatechnologies litigation, Valensa also made false claims to have destroyed the allegedly contaminated astaxanthin, when in fact it resold such product at a profit.  As part of the settlement of that case, Valensa also paid $20,000 in "hush money" to silence a witness who discovered Valensa's fraud with respect to

18

its alleged destruction of the "contaminated" astaxanthin, which destruction actually involved only olive oil which had been used as an astaxanthin "flush" and only contained trace amounts of astaxanthin.  The purpose of these frivolous claims and suits, like Valensa's frivolous infringement claims, was to control the marketplace for astaxanthin as a health supplement.

66.     Plaintiffs' conduct and unfair methods of competition are injurious to consumers in Hawaii and elsewhere in the United States by, among other things, limiting competition and increasing costs.

67.     Plaintiffs' conduct has adversely impacted, and continues to adversely impact, Defendants and consumers by, among other things:  (a) threatening to disrupt Defendants' ability to serve their customers; (b) requiring Defendants to expend considerable resources to retain patent counsel to investigate and respond to Plaintiffs' fraudulent claims and threats; (c) unjustly and unfairly reducing competition for astaxanthin products; and (d) reducing the pool of potential customers for Defendants' astaxanthin products.

68.     As a direct and proximate result of Plaintiffs' unfair competition, Defendants have suffered economic losses in an amount in excess of $75,000.00, the full amount of Defendants damages to be proven at trial.

## COUNT III
### (Violation of Section 43(a) of the Lanham Act)

69.     Plaintiffs have issued bad faith and wholly unsupported press releases and other public statements and made unlawful threats of patent infringement to Defendants and others engaged in intestate commerce, including Jarrow Formuals, Sedona Labs, Sanofi, and

OCS-2327824

the other entities previously described, and have attempted to prohibit Defendants, Defendants' customers and dealers, and even Defendants' competitors from engaging in lawful competition regarding the sale and promotion of astaxanthin.  A partial listing of those deceptive and untruthful statements is set out in paragraphs 45-55 of the preceding count.

70.     Plaintiffs have intentionally misrepresented in interstate commerce that the astaxanthin products sold, advertised, and promoted by Valensa under license from the University of Illinois, are protected by a valid and subsisting U.S. patent, namely the '533 Tso patent even though Valensa and the University both know that the Tso '533 Patent is invalid because, *inter alia*, there is insufficient support in the specification to enable one of ordinary skill in the art to practice the claimed invention, to enable the claimed invention, and to support those claims as required by 35 U.S.C. Section 112, a fact that was known to both inventors, including Dr. Mark Tso, an employee of the University, from the time the Tso Patent was prosecuted, as admitted by Dr. Tso in his own deposition and as asserted by Valensa in subsequent U.S. and European patent applications.

Valensa has further misrepresented that Jarrow Formulas and the other entities previously described are infringing the '533 Patent by advertising and promoting astaxanthin products for "eye health," including for use in a purely prophylactic manner, i.e., to prevent and protect against eye damage, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

71.     At the time that Plaintiffs made such threats and misrepresentations, Valensa knew that its threats and misrepresentations were completely and objectively baseless and that the accused infringers' sale and promotion of astaxanthin products for eye health was

20

lawful and non-infringing competition.  Valensa's purpose was to injure Defendants, Jarrow

and others and to injure competition.

72.     Plaintiff Valensa further knew, and has acknowledged under oath, the falsity

of its statements to Jarrow Formulas and the other companies identified above with respect to

the scope of the Tso '533 patent claims and infringement thereof, with respect to legal

opinions regarding the same, with respect to winning multiple prior enforcement suits against

others, and with respect to worldwide patent coverage, as further explained in detail in the

following paragraphs.

73.     Specifically, on multiple occasions in the years 2006-2013, Valensa's

authorized representatives, including Valensa's president, Rudi Moerck, its Senior Vice

President for Business Development, John Minatelli, its Vice President of Sales, Michael

Cielensky, and other authorized representatives, including Danielle Cook, intentionally

made, approved, ratified and/or failed to correct known materially false statements, both

orally and in writing, to Defendants' customers, potential customers and distributors,

including Jarrow Formulas, Sedona Labs, and other companies (Forever Living Products,

Life Extension, Healthy Directions, LLC, Advanced Theraceuticals, Futurebiotics, Ale-Cera-

Living, Fuji Health, and Natural Care) that, *inter alia*, any use of astaxanthin products for

"eye health," including as a preventive or prophylactic measure to maintain eye health,

infringes the claims of the '533 patent without regard to whether the alleged infringer used or

advocated the use of astaxanthin to treat any disease, damage or injury to the retina or central

nervous system or to protect neurons in a retina from free-radical induced injury, as

specifically required by every claim of the '533 patent.

OCS-2327824

74.     Plaintiffs knew that the claims of the '533 Patent did not cover the alleged infringing activity, when they made those assertions and have subsequently admitted under oath that such claims were inaccurate, overbroad, and false and were known to be false at the time they were made.

75.     In an email from Mr. Minatelli to Mr. Cielensky and Ms. Cook, copied to Mr. Moerck, Valensa's Senior Vice President advised Mr. Cielensky and Ms. Cook that it was permissible to misrepresent Valensa's IP rights.

76.     In another email exchange, Mr. Minatelli ratified and expounded upon Mr. Cielensky's instructions to Ms. Cook to advise Sedona that they infringe solely on the basis that Sedona had stated that its astaxanthin product promotes long-term eye health, supports optimal retinal health, promotes blood vessel strength and protects the eye from blue light / computer screen.  None of these functions are covered by the Tso patents.  In the same communication, Mr. Minatelli also falsely claim that the Tso patent covered cataracts, a disease of the lens, not the retina.  This statement is also knowingly false.

77.     Valensa has also falsely accused Defendants of infringing the invalid Tso patent (an invalid patent cannot be infringed) and the University of Illinois has ratified and approved such conduct by licensing Valensa to enforce the invalid Tso patent against Defendants and others and by joining Valensa in the instant infringement suit.  The University of Illinois and Valensa have also had numerous communications, both orally and in writing, with respect to the enforcement of the invalid Tso patent against Defendants, knowing that the patent was invalid and/or that Defendants, Jarrow and the other entities

OCS-2327824

accused of infringement and/or forced to take a license and/or to buy all of their astaxanthin requirements from Valensa are not infringing the same.

78.     Valensa, the Defendants, Fuji Chemical Industry Company and Algatechnologies are direct competitors of one another and are the major suppliers of astaxanthin in the world.  Jarrow Formulas, Sedona and the other entitities previously identified are major customers and/or resellers of astaxanthin products.  Accordingly, sales made by Valensa by falsely claiming that Tso invented the use of astaxanthin to treat or protect eyes; that Valensa's own products are covered by the Tso patent; and that Defendants, Jarrow and others infringe such patent, have caused and are causing severe damage to the market for astaxanthin, to Defendants, to Jarrow, and to other participants in the astaxanthin market in the form of lost sales, price erosion, and damages to goodwill.  Valensa has specifically damaged Defendants' reputation in the marketplace by falsely and publicly accusing Defendants of infringing the invalid Tso patent.  While difficult to precisely establish, such damages are far in excess of $75,000.00 and are continuing.

79.     Because of the difficulty in ascertaining Defendants' damages, both in the past and in the future, and the irreparable harm caused to Defendants by Valensa's actions, Defendants are entitled to preliminary and permanent injunctions against Valensa and the University of Illinois to stop further misrepresentations and violations of the Lanham Act and to cease all enforcement of the Tso '533 patent and to a declaration that said patent is wholly unenforceable for patent misuse.

80.     Pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117, Defendants are entitled to recover to recover three times the actual damages sustained by them, to recover

23

the costs of this action, and to recover Plaintiff's profits derived from their misrepresentations and violations of the Lanham Act.  Because this is an exceptional case, Defendants are also entitled to recover their reasonable attorneys' fees.

81.    Pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1118, Defendants are also entitled to an order directing Valensa to destroy all labels, signs, prints, packages, receptacles, and advertisements bearing any false representation that Tso invented the use of astaxanthin for either preventive or therapeutic use with respect to the eyes or that Valensa's own products are covered by the Tso patent.

82.    Pursuant to Section 40 of the Lanham Act, 15 U.S.C. §1122, the University of Illinois is not immune under the 11th Amendment of the Constitution or any other doctrine of sovereign immunity from suit in this Court.

## RELIEF REQUESTED

Wherefore Defendants respectfully request this Court to enter a judgment against Plaintiffs and in favor of Defendants:

1.    Declaring the '533 Patent to be invalid and unenforceable;

2.    Declaring that the '533 Patent is not infringed by any activities of Defendants;

3.    Declaring that Plaintiffs have engaged in unfair competition prohibited by HAW.REV.STAT. §480-2 and Section 43(a) of the Lanham Act and have thereby committed patent misuse;

4.    Determining that the case is exceptional pursuant to 35 U.S.C. §285 and 15 U.S.C. §1117(a) and that Defendants are entitled to recover their reasonable attorneys fees from Plaintiffs;

OCS-2327824

5.     Awarding Defendants compensatory damages in an amount in excess of $75,000.00, the full amount to be proven at trial;

6.     Trebling such damages pursuant to 35 U.S.C. §284, 15 U.S.C. §1117 and HAW.REV.STAT. §480-13, and Section 43(a) of the Lanham Act;

7.     Awarding Defendants statutory damages pursuant to HAW.REV.STAT. §480-13;

8.     Directing Plaintiffs to pay over their unlawful profits to Defendants pursuant to 15 U.S.C. §1117(a);

9.     Directing Plaintiffs to destroy all advertising, promotional, marketing or packaging materials that falsely claim that Valensa's products are covered by the Tso patent; that falsely assert or imply that the Tso patent is valid; or that falsely assert or imply that any products or activities of Defendants, infringe the invalid Tso patent;

10.    Enjoining Plaintiffs from continuing their unlawful methods of competition, pursuant to HAW.REV.STAT. §480-13 and Section 43(a) of the Lanham Act;

11.    Awarding such further relief as the Court deems just and proper.


**DEMAND FOR JURY TRIAL**

Defendants demand trial by jury on all issues so triable.

OCS-2327824

Respectfully submitted,

April 8, 2014

/s/ Michael E. Crawford
Michael E. Crawford (*pro hac vice*)
mec@nixonvan.com
Robert A. Rowan (*pro hac vice*)
rar@nixonvan.com
NIXON & VANDERHYE P.C.
901 North Glebe Road
Arlington, Virginia 22203
Telephone:  703-816-4000
Facsimile: 703-816-4100

John A. Boudet (Florida Bar No. 515670)
jboudet@ralaw.com
ROETZEL & ANDRESS, LPA
420 South Orange Avenue
CNL Center II, 7th Floor
P.O. Box 6507
Orlando, FL  32802
Telephone:  407-896-2224
Facsimile:  407-835-3596

*Counsel for defendants CYANOTECH CORPORATION and NUTREX HAWAII, INC.*

## Certificate of Service

I certify that on April 8, 2014 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a Notification of Electronic Filing (NEF) to all counsel of record.

/s/ Michael E. Crawford
Michael E. Crawford (*pro hac vice*)
mec@nixonvan.com
NIXON & VANDERHYE P.C.

OCS-2327824